**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GARY D. PENNINGTON,

                Plaintiff,

vs.                                                                            Case No. 3:14-cv-27-J-JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.
_____/

**OPINION AND ORDER**[1]

**I. Status**

Gary D. Pennington ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for supplemental security income ("SSI"). Plaintiff's alleged inability to work is a result of "2 fingers cut" on Plaintiff's left hand and "[b]ack [p]roblems[.]" See Transcript of Administrative Proceedings (Doc. No. 19; "Tr." or "administrative transcript"), filed June 3, 2014, at 233. On February 1, 2010, Plaintiff filed an application for SSI, alleging an onset disability date of January 2, 2006. Tr. at 114-15, 209-15. Plaintiff's "protective filing date" is listed elsewhere in the administrative transcript as January 11, 2010. Tr. at 12, 229. Plaintiff's application was denied initially, see Tr. at 112, 122, 123-24, and was denied upon reconsideration, see Tr. at 113, 138-40.

On February 23, 2012, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 26-

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 18), filed June 3, 2014; Reference Order (Doc. No. 20), entered June 4, 2014.

75. At the time of the hearing, Plaintiff was fifty (50) years old. Tr. at 30 (listing Plaintiff's date of birth). The ALJ issued a Decision on May 23, 2012, finding Plaintiff not disabled. Tr. at 12-21. The Appeals Council then received additional evidence in the form of a brief from Plaintiff's representative. See Tr. at 4-5; see also Tr. at 286-87 (representative's brief). On October 31, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-3, thereby making the ALJ's Decision the final decision of the Commissioner. On December 23, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

On appeal, Plaintiff argues there are four errors on the part of the ALJ. See Memorandum of Law in Support of Complaint Against Commissioner of Social Security (Doc. No. 23; "Pl.'s Mem."), filed July 31, 2014. Plaintiff first contends that the ALJ's credibility finding is not supported by substantial evidence. Pl.'s Mem. at 3, 8-15. Second, Plaintiff argues that the VE's testimony and the ALJ's findings about the jobs Plaintiff can perform are not supported by substantial evidence because the ALJ did not include all of Plaintiff's impairments and their effects in the hypothetical and because Plaintiff was placed in the wrong age group. Id. at 3, 15-17. Third, Plaintiff contends that the ALJ "did not apply the proper legal standard" regarding Listing 14.09 of the Listings set forth in 20 CFR Part 404, Subpart P, Appendix 1 ("Listings"). Id. at 3, 18-19. Fourth, Plaintiff argues that the ALJ's entire Decision is not supported by substantial evidence, but Plaintiff rests this argument on the alleged errors identified in the first three issues. Id. at 3, 19-20. On October 6, 2014,

Defendant responded to Plaintiff's arguments by filing a Memorandum in Support of the Commissioner's Decision (Doc. No. 26; "Def.'s Mem.").

After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds the ALJ's Decision is due to be affirmed for the reasons explained herein.

## **II. The ALJ's Decision**

When determining whether an individual is disabled,[2] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 14-21. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since January 11, 2010, the application date." Tr. at 14 (emphasis and citation omitted). At step two, the ALJ found Plaintiff suffers from "the following severe impairments: disorders of the spine,

---

[2] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

right thumb osteoarthritis and chronic obstructive pulmonary disease [("COPD")]." Tr. at 14 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 15 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff can] perform light work as defined in 20 CFR [§] 416.967(b) except with ability to change positions between sitting and standing with no more than occasional bilateral feeling, climbing ramps/stairs, balancing, kneeling, stooping, crouching, crawling and climbing of ladders, ropes or scaffolds; no concentrated exposure to hazards, dangerous machinery or heights; no concentrated exposure to pulmonary irritants including dusts, fumes, odors, gases.

Tr. at 15 (emphasis omitted). At step four, the ALJ found Plaintiff "has no past relevant work." Tr. at 20 (emphasis and citation omitted). At step five, after considering Plaintiff's age (forty-eight (48) when he filed his SSI application), education (at least high school), lack of work experience, and RFC, the ALJ relied on the testimony of the VE to find that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 20 (emphasis and citation omitted), including "Ticket taker," "Office helper," and "Assembler, plastic hospital parts," Tr. at 20-21. The ALJ concluded that Plaintiff "has not been under a disability . . . since January 11, 2010, the date the application was filed." Tr. at 21 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions

of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV.  Discussion

As noted above, Plaintiff raises four issues on appeal.  They are discussed in turn.

### A. Plaintiff's Credibility

Plaintiff first takes issue with the ALJ's credibility finding. Pl.'s Mem. at 3, 8-15.  "[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition;

and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." Tr. at 18. The ALJ

then provided a number of reasons why she discredited Plaintiff's statements. Tr. at 19. Plaintiff's challenges to those reasons are addressed in turn.

First, Plaintiff takes issue with the ALJ's finding that Plaintiff "tend[ed] to exaggerate as he reported [t]o the consultative examiner that he suffered from weakness and poor grip strength in both hands but displayed 5/5 upper extremity strengt[h] and 5/5 bilateral grip strength." Tr. at 19 (citation omitted); see Pl.'s Mem. at 10. The ALJ elaborated: "[t]he consultative examiner found that [Plaintiff's] fine manipulation skills were intact at both upper extremities and noted that he had no difficulty manipulating buttons or opening doors." Tr. at 19. Plaintiff contends that because there was no previous assessment of Plaintiff's strength, and because the medical records demonstrate Plaintiff has numerous issues with his hands, "the medical evidence support[s Plaintiff's] testimony that he [i]s not able to use his hands as well as he once could." Pl.'s Mem. at 10. The ALJ's finding in this regard, however, is supported by substantial evidence. Compare Tr. at 333 (Plaintiff's report to the consultative examiner David W. Carpenter, M.D. that his "weakness and poor grip strength affect[] both hands"), and Tr. at 56 (Plaintiff's testimony that he has difficulty buttoning his shirt, tying a knot, and tying his shoes), with Tr. at 335 (examiner's findings that Plaintiff's "[g]rip strength is 5/5 bilaterally"; his "[f]ine manipulation skills are intact at both upper extremities"; and Plaintiff has "no difficulty manipulating buttons or opening doors").

Second, Plaintiff challenges the ALJ's finding that Plaintiff "has a fairly poor work history with no real past relevant work, which also does not enhance his credibility and suggests some secondary motivational issues." Tr. at 19; see Pl.'s Mem. at 10-11. The administrative transcript, however, supports the ALJ's finding. Plaintiff reported having three

(3) jobs in the last fifteen (15) years: working as a "[h]andy [m]an" performing maintenance where he lives from 2003 to the present; doing "[o]dd [j]obs" for a temporary agency from 1991 to 2002; and working as a "[m]echanic" in 1995.  Tr. at 241.  Plaintiff had no reported earnings after 2002 (four (4) years prior to his alleged disability onset date).  Tr. at 222-23.  The ALJ properly considered Plaintiff's poor work history, among other factors, in assessing Plaintiff's credibility.  See 20 C.F.R. § 416.929(c)(3) (stating that the Administration "will consider all of the evidence presented, including information about your prior work record . . .").

Third, Plaintiff takes issue with the ALJ's finding that Plaintiff's "activities of daily living suggest a capacity for light work as he [i]s capable of caring for his dogs, doing some yard work and housecleaning."  Tr. at 19; see Pl.'s Mem. at 11.  This finding, too, is supported by substantial evidence.  See Tr. at 55 (Plaintiff testifying he helps "cut the grass" and "weed eat"); Tr. at 65 (Plaintiff testifying he lifts his eighteen (18) pound dog when she shows him attention, which is "all the time"); Tr. at 66 (Plaintiff testifying on a good day, he "could help do the laundry, clean the house, maybe go out and . . . start on cleaning the yard").

Fourth, Plaintiff challenges the ALJ's finding that Plaintiff's "treatment records show that his treatment has been rather conservative and primarily consisted of medication management through the VA."  Tr. at 19; see Pl.'s Mem. at 12-13.  The ALJ elaborated:

> Although [Plaintiff] underwent a one-time evaluation with . . . Dr. Kollmer (orthopedic), there is no indication that he has continued treatment with this specialist.  There is no recommendation for injections or surgery.  Lastly, [Plaintiff's] medication regimen has remained essentially unchanged with no significant side effects reported.

Tr. at 19.  On the whole, the ALJ properly took into account Plaintiff's treatment, along with the other factors the ALJ considered, in assessing Plaintiff's credibility.  The ALJ accurately described Plaintiff's treatment as rather conservative and consisting of medication management.  Tr. at 19; see Tr. at 39-40 (Plaintiff acknowledging at the hearing that his treatment is limited to medication).  The ALJ also accurately recounted that Plaintiff's medication regimen for his pain has remained essentially constant, consisting of Naproxen for low back pain and Methocorbomal for muscle spasms.  Tr. at 15, 19; see, e.g., Tr. at 314, 385-86, 389-91, 396-97, 400-01, 409, 428, 439, 446.  Further, Plaintiff testified during the hearing that his medications reduce his back pain from a 7 or 8/10 to between 2 and 4/10.  Tr. at 51-53. Although Plaintiff testified that his medications can make him drowsy, Tr. at 39, he did not complain about this alleged side effect to his treating and examining doctors, Tr. at 333-35, 387-403, 435-55.  Further, despite his alleged drowsiness, Plaintiff is not precluded from driving "[a]s needed, a few times a week, two or three times a week" from one city to another to "go to the grocery store" and "look for work."  Tr. at 31.

The undersigned does not find particularly persuasive the ALJ's observation that Plaintiff saw consultative examiner Charles E. Kollmer, M.D. only once and has not continued treatment with that examiner.  See Tr. at 19.  As Plaintiff represents in his memorandum, Dr. Kollmer was asked to evaluate Plaintiff in connection with his social security application because Plaintiff's treating physician at the Veteran's Administration is unable to perform such evaluations.  See Pl.'s Mem. at 12; Tr. at 387 (treating physician's letter to Plaintiff indicating he is "not allowed to complete these types of physicals"); Tr. at 466 (Dr. Kollmer's report indicating he was asked to complete a "[o]ne time evaluation

-9-

only"). These types of evaluations are not uncommon. It is unclear, then, why the ALJ found it noteworthy that Plaintiff did not continue treatment with Dr. Kollmer. Nevertheless, in light of the ALJ's overall correct finding regarding Plaintiff's medical treatment being conservative in nature, combined with the numerous other factors the ALJ articulated in discounting Plaintiff's credibility, this one questionable observation made by the ALJ in assessing Plaintiff's credibility is harmless and does not require remand.[3]

## B. VE's Testimony / ALJ's Step Five Findings

Plaintiff next argues that the VE's testimony is not supported by substantial evidence because the hypothetical "did not address [Plaintiff's] fatigue"; because it did not sufficiently account for Plaintiff's COPD; and because "the ALJ placed [Plaintiff] in the wrong age group." Pl.'s Mem. at 16-17. In the fifth step of the sequential evaluation process, an ALJ may pose a hypothetical question to a VE as part of his determination of whether the claimant can obtain work in the national economy. See Wilson, 284 F.3d at 1227 (citing Wolfe v. Chater, 86 F.3d 1072, 1077-78 (11th Cir. 1996)). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. Corbitt v. Astrue, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted).

---

[3] The ALJ, in the part of the Decision discussing the medical opinions of record (which discussion Plaintiff does not specifically challenge), noted that the treating physician "was unwilling to assess any limitations." Tr. at 19 (citation omitted). Plaintiff recognizes that the ALJ did not use this alleged unwillingness to discredit Plaintiff but nevertheless takes issue with the ALJ's characterization of the treating physician's letter. Pl.'s Mem. at 14-15. It does appear that the letter may have been mischaracterized to a degree because, as explained above, the physician actually wrote that he is "not allowed to complete these types of physicals." Tr. at 387. Nevertheless, this does not substantially affect the ALJ's credibility finding.

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184, at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citations omitted). "[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson, 284 F.3d at 1227 (citing Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999)); see also Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (citation omitted).

Here, the ALJ did not have to address Plaintiff's alleged fatigue in the hypothetical to the VE that was ultimately adopted as the RFC because, as explained above, the ALJ properly found those allegations incredible to the extent they conflict with the ALJ's RFC determination. Regarding Plaintiff's contention about the hypothetical not properly accounting for Plaintiff's COPD, the undersigned finds that it did. The ALJ clearly considered Plaintiff's COPD, because she found it to be a severe impairment at step two of the sequential inquiry. Tr. at 14. The ALJ also acknowledged the COPD in discussing the medical evidence of record, Tr. at 16, and Plaintiff's testimony regarding shortness of breath, Tr. at 18. Moreover, the ALJ specifically stated: "I have considered [Plaintiff's]

pulmonary issues and although there is no pulmonary function testing that has been done, [I have] limited [Plaintiff] to no concentrated exposure of pulmonary irritants." Tr. at 19-20. It is abundantly clear that the ALJ considered Plaintiff's COPD in assessing the RFC, and the ALJ sufficiently accounted for the disorder in the RFC.

Finally, Plaintiff contends the ALJ placed him in the wrong age group (younger individual) in the hypothetical to the VE, and had he been placed in the right age group (closely approaching advanced age), the Medical-Vocational Guidelines ("Grids") would have required a finding of disabled. Pl.'s Mem. at 17. The ALJ did assume in the hypotheticals to the VE that Plaintiff belonged in the younger age group. See Tr. at 68-73. The ALJ recognized in the Decision, however, that when Plaintiff filed his application, he was forty-eight (48) years old, which is defined as a "younger individual age 18-49," and by the time the Decision was issued, Plaintiff had "changed age category to closely approaching advanced age." Tr. at 20 (emphasis and citation omitted).

Plaintiff cites no authority to support his contention that the ALJ should have used the older age category in the hypothetical to the VE, and Plaintiff does not contend the VE's testimony was flawed as a result. See Pl.'s Mem. at 17. Rather, Plaintiff argues that the use of the older age group "would place [Plaintiff] in Grid Rule 201.12, which provides for a finding of disabled." Id. (citation and some capitalization omitted). Plaintiff is mistaken. The Grid upon which Plaintiff relies, 201.12, applies to individuals who can perform sedentary work. See Rule 201.12, 20 C.F.R. Part 404, Subpart P, Appendix 2. The ALJ, however, found that Plaintiff is capable of light work with additional restrictions. See Tr. at 15. The most appropriate Grid to reference in Plaintiff's case, 202.13, applies to individuals

who can perform the full range of light work – which Plaintiff cannot do – and directs a finding of not disabled. The ALJ recognized this in the written Decision. Tr. at 20. Because the ALJ found that Plaintiff can perform less than the full range of light work, the ALJ appropriately relied on the testimony of a VE, rather than the Grids, in determining whether Plaintiff can perform work that exists in significant numbers in the national economy. See Walker, 826 F.2d at 1002-03 (stating that "[e]xclusive reliance on the grids is not appropriate . . . when the claimant is unable to perform a full range of work at a given functional level"). Thus, even if the ALJ erroneously placed Plaintiff in the wrong age group for the hypothetical, such error was harmless.

### C. Listing 14.09

Plaintiff argues that he meets Listing 14.09, and the ALJ "did not apply the proper legal standard" in determining he does not meet or equal any Listing. Pl.'s Mem. at 18-19 (emphasis omitted). Regarding the Listings, the ALJ found:

> Neither [Plaintiff] nor his representative attorney has identified findings establishing that [Plaintiff] has met or equaled any listed impairment. Moreover, I find that the record does not establish that [Plaintiff] has had an impairment or combination of impairments that meets or medically equals one of [the Listings] at any time through the date of this decision. Furthermore, no treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.

Tr. at 15. Despite these findings, Plaintiff contends on appeal that he meets Listing 14.09, which addresses Inflammatory Arthritis. Pl.'s Mem. at 18-19. That Listing requires the arthritis to be:

> As described in 14.00D6. With:
> D. Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

>    1. Limitation of activities of daily living.
>    2. Limitation in maintaining social functioning.
>    3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.09D.

The burden rests on the claimant to prove the existence of a Listing-level impairment. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991). Mere diagnosis of a listed impairment is not sufficient. See, e.g., id.; Wilson, 284 F.3d at 1224. "To meet a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." Wilson, 284 F.3d at 1224 (internal quotations and citations omitted). "To equal a Listing, the medical findings must be at least equal in severity and duration to the listed findings." Id. (internal quotations and citations omitted).

Plaintiff does not cite any medical reports documenting the requirements of the Listing he now contends he meets. See Pl.'s Mem. at 18-19. The ALJ appropriately found that Plaintiff does not meet or equal a Listing.

**D. Decision Supported by Substantial Evidence**

As noted above, Plaintiff's last argument – that the Decision is not supported by substantial evidence – rests on the previous three alleged points of error. See Pl.'s Mem. at 19-20. For all of the foregoing reasons, the undersigned finds no error in the ALJ's Decision and finds that it is supported by substantial evidence in the administrative transcript.

## V. Conclusion

After due consideration, it is

-14-

**ORDERED**:

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

2.      The Clerk is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 4, 2015.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of record